Caleb C. Wilkins, WSB #7-5527
Richard D. Bush, WSB #5-2647
COAL CREEK LAW LLC
P.O. Box 467
Cheyenne, WY 82003-0467
P: (307) 634-1525
F: (307) 638-7335
cwilkins@coalcreeklaw.com
tbush@coalcreeklaw.com

Mark Berkowitz (*pro hac vice* forthcoming)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
E-mail: mberkowitz@tarterkrinsky.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| AVRAHAM EISENBERG,<br><br>    Plaintiff,<br><br>v.<br><br>MANGO LABS, LLC; MANGO DOA and DAFYDD DURAIRAJ,<br><br>    Defendants. | **Civil Action No.** |

## COMPLAINT AND JURY DEMAND

Plaintiff Avraham Eisenberg ("Eisenberg"), through his counsel, as and for its claims against the Defendants Mango Labs LLC ("Mango Labs"), Mango DAO and Dafydd Durairaj (collectively, "Defendants"), alleges as follows:

1

## THE PARTIES

1. Eisenberg is a natural person currently in federal custody in New Jersey. Prior to incarceration, Eisenberg was domiciled in San Juan, Puerto Rico.

2. On information and belief, Defendant Mango Labs is a Wyoming limited liability company whose sole member, Defendant Durairaj, is domiciled in North Carolina. Mango Labs has an address in this District at 30 N Gould St Ste R, Sheridan, WY 82801.

3. On information and belief, Defendant Mango DAO is an unincorporated group governed by the holders of MNGO tokens. Its governance is effectively controlled by Mango Labs, Durairaj and their collaborators.

4. On information and belief, Defendant Durairaj is a natural person that resides at 2112 Cadence Trace Dr, Mint Hill, NC 28227, and is the sole member of Defendant Mango Labs.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this Action under 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy is greater than $75,000.

6. This Court may exercise general personal jurisdiction over Mango Labs and its sole member, Durairaj, because Mango Labs is a Wyoming company with a registered agent in this District.

7. In addition, Mango Labs is merely an alter ego of Durairaj.

8. On information and belief, Mango Labs: (1) is operated out of Durairaj's home; (2) is controlled, managed and influenced solely by Durairaj; (3) is used for conducting the personal

business of Durairaj; (4) has been used as an artifice for concealing Durairaj's control over the Mango DAO.

9. On information and belief, Durairaj is an owner of MNGO governance tokens and is a member of the Mango DAO.

10. On information and belief, Mango Labs is an owner of MNGO governance tokens and is a member of the Mango DAO.

11. On September 27, 2024, the SEC filed a complaint against Mango DAO, Mango Labs, and the Blockworks Foundation. The SEC alleged that Mango DAO engaged in an unregistered security offering when it issued and sold MNGO tokens and that Mango Labs acted as an unregistered broker related to the sale of MNGO tokens, as well as other activities.

12. On October 1, 2024, a Final Judgment was entered against Mango Labs in accordance with a settlement agreement with the SEC. Per the settlement agreement and final judgment, Mango Labs was ordered to, among other things, to pay a fine and to burn (i.e., destroy) all of its MNGO tokens. On information and belief, Mango Labs continued to own and control one or more digital wallets that contain MNGO tokens.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## BACKGROUND FACTS

14. Eisenberg is an investor and cryptocurrency trader.

15. Mango Markets is a decentralized cryptocurrency exchange and operates in the decentralized finance ("DeFi") ecosystem. The organization that governs the protocol is the Mango Decentralized Autonomous Organization ("Mango DAO").

16. Mango Labs is an entity that develops software for the Mango DAO and effectively controls Mango Markets.

17. On or about October 11, 2022, a series of trades were made on the Mango Markets

platform that resulted in the platform becoming insolvent ("October Trades").

18. Eisenberg subsequently acknowledged involvement with these trades.

19. Immediately after the October Trades, Mango DAO (through Durairaj) and Eisenberg engaged in discussions towards resolving the matter.

20. On October 11, 2022, an initial settlement proposal was presented for voting by the Mango DAO ("the First Proposal").

21. Mango DAO users voted decidedly against the First Proposal.

22. On October 14, 2022, after further discussions, Durairaj, on behalf of the Mango DAO, presented a second proposal with the aim of fully resolving the matter for all involved ("the Second Proposal").

23. The Second Proposal is reproduced below:



24. Specifically, the proposal put forth by Durairaj, on behalf of the Mango DAO, provided that: (1) Mr. Eisenberg would return a portion of his gains; (2) the Mango DAO treasury

would use the funds to make all users whole; (3) any claims against Mr. Eisenberg would be waived; and (4) Mango Markets' members would not pursue any freezing of Mr. Eisenberg's funds.

25. The Second Proposal (herein, the "Settlement Agreement") was passed decisively by the Mango DAO.

26. Specifically, 96.6% of the votes cast by the Mango DAO were in favor of the Second Proposal.

27. Per the Settlement Agreement, Mr. Eisenberg transferred funds totaling approximately $67,000,000 to the Mango DAO.

28. At that point, all involved considered this matter closed and Mr. Eisenberg heard nothing further from Mango DAO, Mango Labs, Mr. Durairaj or anyone else purportedly affiliated with these entities.

29. On January 25, 2023, more than three months after the Settlement Agreement was entered, Mango Labs initiated legal action against Mr. Eisenberg in the United States District Court for the Southern District of New York for: (1) conversion; (2) fraudulent misrepresentation; (3) unjust enrichment; and (4) a declaratory judgment.

30. The same day, Mango Labs filed an Application for a Temporary Restraining Order and Preliminary Injunction.

31. On information and belief, Mango Markets, Mango Labs and Durairaj sought, and assisted in, the criminal prosecution of Eisenberg.

32. On information and belief, approximately $40,000,000 remains in the Mango DAO treasury.

33. Recently, Mango Labs, Durairaj, and other members of the Mango DAO have announced their intent to dissolve the Mango DAO and disburse the funds in the Mango DAO

treasury amongst themselves.

## FIRST CLAIM – BREACH OF CONTRACT
### (as to Mango DAO, Mango Labs and Durairaj)

34. Plaintiff realleges and incorporates all previous paragraphs.

35. On or about August 26, 2022, Plaintiff entered into the Settlement Agreement with Defendant Mango DAO.

36. Mango Labs and Durairaj are members of the Mango DAO and effectively control the Mango Markets.

37. The Settlement Agreement provided, inter alia, that: (1) Mr. Eisenberg would return certain funds to Mango Markets; (2) the Mango DAO treasury would make all Mango Markets users whole; (3) any claims against Mr. Eisenberg would be waived; and (4) Mango Markets' members would not pursue any freezing of Mr. Eisenberg's funds.

38. Mr. Eisenberg performed under the Settlement Agreement.

39. Specifically, per the Settlement Agreement, Mr. Eisenberg transferred funds totaling approximately $67,000,000 to the Mango DAO.

40. Defendants breached the Settlement Agreement, in multiple respects.

41. Defendants filed a lawsuit against Mr. Eisenberg for damages even though they released all claims against Mr. Eisenberg.

42. Defendants sought and obtained a temporary restraining order freezing Mr. Eisenberg's funds.

43. Defendants sought a preliminary injunction freezing Mr. Eisenberg's funds.

44. Defendants failed to repay all Mango Markets users and now seek to abscond with the user funds.

45. The Settlement Agreement is a valid and enforceable contract.

46. Mr. Eisenberg substantially performed all of his obligations under the Agreement.

47. Defendants breached the Agreement.

48. Per the Settlement Agreement, first and foremost, Plaintiff seeks to make all users whole.  This claim, or any other, does not demand the return of any funds previously distributed to Mango Markets users.

49. As a direct and proximate result of Defendants' breach of the Agreement, Plaintiff suffered damages in an amount to be determined at trial, plus pre-judgment interest.

## SECOND CLAIM – UNJUST ENRICHMENT
### (as to Mango DAO, Mango Labs and Durairaj)

50. Plaintiff realleges and incorporates all previous paragraphs.

51. As set forth supra, Mr. Eisenberg paid to Defendants $67,000,000 as part of the Agreement.

52. Defendants accepted these payments and agreed to (a) use the funds to make all Mango Markets users whole; (b) waive any claims against Mr. Eisenberg; and (c) not pursue any freezing of Mr. Eisenberg's funds.

53. Defendants failed to abide by these terms and, instead, now seek to distribute the returned funds in violation of the Settlement Agreement.

54. It is against equity and good conscience to permit Defendants to retain and distribute the funds given that Defendants failed to carry out the terms of the Settlement Agreement, which required, inter alia, that all Mango Markets users be made whole. This claim, or any other, does not demand the return of any funds previously distributed to Mango Markets users.

55. By reason of the foregoing, Defendants have been unjustly enriched at Mr. Eisenberg's expense in an amount to be determined at trial, plus pre-judgment interest.

### THIRD CLAIM – FRAUDULENT INDUCEMENT
### (as to Mango DAO and Durairaj)

56. Plaintiff realleges and incorporates all previous paragraphs.

57. As alleged supra, Defendants Mango DAO and Durairaj put forth the Second Proposal.

58. The Second Proposal provided that: (1) Mr. Eisenberg would return a portion of his gains; (2) the Mango DAO treasury would make all Mango Markets users whole; (3) any claims against Mr. Eisenberg would be waived; and (4) Mango Markets' members would not pursue any freezing of Mr. Eisenberg's funds.

59. Defendants Mango DAO and Durairaj had no intention of honoring the terms of the Second Proposal, if accepted by Mr. Eisenberg.

60. Rather, on information and belief, the purpose of the Second Proposal was to fraudulently induce Mr. Eisenberg to transfer funds, totaling approximately $67,000,000, to Mango DAO.

61. In furtherance of the fraud, Defendant Durairaj personally made the representations, on behalf of Mango DAO, including in communications with Mr. Eisenberg, between October 11-14, 2022.

62. Based on these representations, which were false, Mango DAO and Durairaj were able to lull Mr. Eisenberg into entering the Settlement Agreement and transferring $67,000,000 to the Mango DAO.

63. Mango DAO and Durairaj were aware that, but for these misrepresentations, Mr. Eisenberg would not have entered into the Settlement Agreement or transferred any funds to the Mango DAO.

64. Upon information and belief, Mango DAO and Durairaj knew that the foregoing misrepresentations were false at the time that they were made. Unbeknownst to Mr. Eisenberg at that time, but as Mango DAO and Durairaj were well-aware when they negotiated the Settlement Agreement with Mr. Eisenberg, Mango DAO and Durairaj had no intention of abiding by the agreed terms or otherwise.

65. Mr. Eisenberg reasonably relied upon Mango DAO's and Durairaj's misrepresentations in entering into the Settlement Agreement.

66. By virtue of Mango DAO and Durairaj misrepresentations, Mr. Eisenberg suffered damages in an amount to be determined at trial, plus punitive damages and pre-judgment interest. This claim, or any other, does not demand the return of any funds previously distributed to Mango Markets users.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray for judgment as follows:

1. A preliminary and permanent injunction restraining Defendants from transferring, disbursing, or otherwise secreting the funds held by the Mango DAO;

2. An award of all damages that Plaintiffs have suffered as a result of Defendants' breach of contract;

3. An award of all damages that Plaintiffs have suffered as a result of Defendants' unjust enrichment;

4. An award of all damages that Plaintiffs have suffered as a result of Defendants' fraudulent inducement;

5. An award of all costs and fees, including attorneys' fees, incurred in this Action; and

6. Such other and further relief as the Court shall find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a six-person jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action and has paid the jury fee.

Dated: January 12, 2026.                                  Respectfully submitted,

By: */s/ Caleb C. Wilkins*
Caleb C. Wilkins, WSB #7-5527
Richard D. Bush, WSB #5-2647
COAL CREEK LAW LLC
P.O. Box 467
Cheyenne, WY  82003-0467
P: (307) 634-1525
F: (307) 638-7335
cwilkins@coalcreeklaw.com
tbush@coalcreeklaw.com

Mark Berkowitz (*pro hac vice* forthcoming)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY  10018
Tel.: (212) 216-8000,
Fax: (212) 216-8001
E-mail: mberkowitz@tarterkrinsky.com
*Attorneys for Plaintiff Avraham Eisenberg*