Caleb C. Wilkins, WSB #7-5527
Richard D. Bush, WSB #5-2647
COAL CREEK LAW LLC
P.O. Box 467
Cheyenne, WY 82003-0467
P: (307) 634-1525
F: (307) 638-7335
cwilkins@coalcreeklaw.com
tbush@coalcreeklaw.com

Mark Berkowitz (*Pro Hac Vice*)
TARTER KRINSKY & DROGIN LLP
1350 Broadway New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
mberkowitz@tarterkrinsky.com
*Attorneys For Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| AVRAHAM EISENBERG,<br><br>  Plaintiff,<br><br>v.<br><br>MANGO LABS, LLC; MANGO DOA and DAFYDD DURAIRAJ,<br><br>  Defendants. | **Civil Action No. 1:26-CV-00011-SWS** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| | A. Mango Markets, The Parties, and Their Dispute | 1 |
| | B. The Parties Settled Their Dispute | 2 |
| | C. Defendants Breach the Settlement Agreement | 3 |
| | D. Dissolution of the Mango DAO and Disbursement of Funds from the Treasury | 4 |
| III. | LEGAL STANDARD | 5 |
| IV. | AN INJUNCTION SHOULD BE GRANTED | 6 |
| | A. Plaintiff is Likely to Succeed on The Merits of His Claims | 6 |
| |     1. The Settlement Agreement Is Valid | 6 |
| |     2. Defendants Breached the Agreement | 7 |
| | B. Plaintiff Will Be Irreparably Harmed Absent an Injunction | 8 |
| | C. The Threatened Harm To The Plaintiffs Outweighs Any Injury To The Defendant From An Injunction | 9 |
| | D. An Injunction Would Not Be Adverse To The Public Interest | 10 |
| V. | THE COURT SHOULD PRESERVE THE STATUS QUO | 11 |
| VI. | A BOND SHOULD NOT BE REQUIRED | 11 |
| VII. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biles v. Schneider*,
  No. 19-CV-48-F, 2019 WL 13222745 (D. Wyo. Mar. 26, 2019)............................................11

*Dobson v. Portrait Homes, Inc.*,
  2005 WY 95, 117 P.3d 1200 (Wyo. 2005) ................................................................................7

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
  269 F.3d 1149 (10th Cir. 2001) ................................................................................................8

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
  356 F.3d 1256 (10th Cir. 2004) ................................................................................................5

*Dykeman v. Ochoa*,
  No. 08-CV-122-B, 2008 WL 11411452 (D. Wyo. July 15, 2008) .........................................10

*E.E.O.C. v. Am. Exp. Pub. Corp.*,
  681 F.Supp. 216 (S.D.N.Y.1988) .............................................................................................7

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*,
  415 U.S. 423 (1974)..................................................................................................................5

*Indus. Recycling Sys., Inc. v. Ahneman Assocs., P.C.*,
  892 F. Supp. 547 (S.D.N.Y. 1995) ...........................................................................................7

*Kendrick v. Barker*,
  2001 WY 2, 15 P.3d 734 (Wyo. 2001) .....................................................................................6

*Miller v. Austin*,
  622 F. Supp. 3d 1105 (D. Wyo. 2022)....................................................................................11

*Samuels v. Dao*,
  No. 23-cv-06492-VC, 2024 WL 4815022 (N.D. Cal. Nov. 18, 2024) ......................................2

*Sec. & Exch. Comm'n v. End of Rainbow Partners, LLC*,
  No. 17-CV-02670-MSK, 2017 WL 5404199 (D. Colo. Nov. 14, 2017).................................10

*United States ex rel. Taxpayers Against Fraud v. Singer Co.*,
  889 F.2d 1327 (4th Cir. 1989) ..................................................................................................8

*Tri-State Generation and Transmission Association, inc. v. Shoshone River
  Power, Inc.*,
  805 F.2d 351 (10th Cir. 1986) ..................................................................................................8

*United States Sec. & Exch. Comm'n v. Ameristar, LLC*,
  No. 24-CV-169-KHR, 2024 WL 4953425 (D. Wyo. Sept. 9, 2024) ................................. 9, 11

*Wiechmann v. Ritter*,
  44 Fed. Appx. 346 (10th Cir. 2002) ............................................................................................ 5

**Other Authorities**

https://www.dlnews.com/articles/defi/mango-markets-insiders-accused-of-dao-
  raid-with-mngo-buyback/ (last accessed January 15, 2026) ...................................................... 4

https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26140 (last
  accessed January 15, 2026) ........................................................................................................ 4

https://www.sec.gov/newsroom/press-releases/2024-154 (last accessed January
  15, 2026) .................................................................................................................................... 4

Plaintiff Avraham Eisenberg ("Plaintiff" or "Mr. Eisenberg") respectfully submits this Memorandum in Support of his Motion for a Temporary Restraining Order and Preliminary Injunction.

## I.    INTRODUCTION

Mr. Eisenberg respectfully requests that this Court maintain the status quo—that has existed for the past three years—for a period of 14 days until a preliminary injunction hearing can be held. Specifically, Mr. Eisenberg seeks to restrain Defendants Mango Labs, LLC ("Mango Labs"), Mango DAO, and Dafydd Durairaj from transferring, dissipating or disposing of the assets held in the treasury of the Mango DAO—a decentralized cryptocurrency exchange—and dissolving the DAO.

Plaintiff's breach of contract and fraudulent inducement claims cannot be seriously contested. And, if the assets-in-question are disposed, Plaintiff will have no ability to enforce a 2022 settlement agreement entered into by the Parties and to protect those impacted by Defendants' breach of the agreement and self-dealing. Therefore, for the reasons detailed below, a temporary restraining order and preliminary injunction are warranted.

## II.    FACTUAL BACKGROUND

### A.    Mango Markets, The Parties, and Their Dispute

Mango Markets is an exchange and trading protocol with "decentralized governance." (Ex. 3, Litepaper at 1).[1] Specifically, Mango Markets is governed by MNGO token holders via the Mango DAO or "Decentralized Autonomous Organization." (Ex. 4, Overview at 1; *see also* Ex. 5 at 1 ("MNGO is a governance token whose ownership grants voting rights on proposals to dictate Mango Markets protocol's future.")). "Collectively, the token holders have the power to upgrade

---

[1] As used herein, "Ex." refers to the exhibits attached to the January 16, 2026 Declaration of Mark Berkowitz.

1

the protocol as they see fit, only constrained by the checks-and-balances of the DAO." (Ex. 3 at 6). "Anybody with 0.1% of Mango Token staked can propose a governance action . . . ." (Ex. 3 at 6). "Proposals are executable code, not suggestions for a team or foundation to implement." (Ex. 3 at 6). "All proposals are subject to a 3 day voting period, and any Mango Token staker can vote for or against the proposal." (Ex. 3 at 6). "If a majority, and at least 2% of the total Mango Token supply are cast for the proposal, it . . . can be implemented after 2 days." (Ex. 3 at 6).[2]

Mango Labs is an entity owned and controlled by Dafydd Durairaj, who was one of the founders of Mango Markets. (Ex. 5, Durairaj Decl. ¶1). Mango Labs, which is nothing more than an alter ego for Mr. Durairaj, has near complete control over the Mango DAO and can freeze MNGO tokens (and, in turn, actions by token holders). (*Id.* ¶¶21, 26; *see also* Ex. 6 ¶29 (explaining the digital wallets owned by Mr. Durairaj routinely received payments from the Mango DAO designated for Mango Labs, and vice versa), *id.* ¶35 (discussing Mr. Durairaj's ability to freeze token and grant himself enhanced voting power)).

Mr. Eisenberg is an investor and cryptocurrency trader. On or about October 11, 2022, a series of trades were made on the Mango Markets platform by Mr. Eisenberg that yielded over $100 million in cryptocurrency ("October Trades"). Mr. Eisenberg contended that the trades simply used the trading the protocol as designed, while Defendants contended that the trades were an improper exploit.

B.   **The Parties Settled Their Dispute**

Following the October Trades, Defendants and Mr. Eisenberg engaged in discussions towards resolving their dispute. On October 11, 2022, an initial settlement proposal was presented

---

[2] Courts have found a DAO was a cognizable entity akin to a partnership with duties flowing among the trusted partners. *See Samuels v. Dao*, No. 23-cv-06492-VC, 2024 WL 4815022, at *5–7 (N.D. Cal. Nov. 18, 2024).

for voting ("the First Proposal"). (*See* Ex. 1&2). Mango Markets users voted **decidedly against** the First Proposal. (Ex. 2 (just 9.6% of voters were in favor of the proposal)).

On October 14, 2022, after further discussions, Mr. Durairaj personally presented a second proposal to the Mango DAO with the aim of resolving the matter for all involved ("the Second Proposal"). (Ex. 7 at 1-3). Specifically, the proposal put forth by Mr. Durairaj provided that: (1) Mr. Eisenberg would return a portion of his gains totaling approximately $67 million; (2) the Mango DAO treasury would cover any remaining "bad debt in the protocol" (i.e., make all Mango Markets users whole); (3) any claims against Mr. Eisenberg would be waived; and (4) Mango Markets token holders would not pursue any freezing of Mr. Eisenberg's remaining funds. (*Id.*). The Second Proposal (herein, the "Settlement Agreement") "passed" decisively. (*Id.* (96.6% voting in favor of the proposal)).

Per the Settlement Agreement, Mr. Eisenberg promptly transferred funds totaling approximately $67 million to Mango Markets, which funds were placed in the Mango Markets "treasury," i.e., the collection of funds and assets controlled by the Mango DAO ("Mango Treasury"). (Ex. 5 ¶5). Several weeks later, eligible Mango Markets members received reimbursements from the Mango DAO treasury. (*Id.*). At that point, Plaintiff considered this matter closed.

### C. Defendants Breach the Settlement Agreement

Defendants did not uphold any part of the Settlement Agreement. On January 25, 2023, more than three months after the Settlement Agreement was entered, Mango Labs filed suit in federal court in New York against Mr. Eisenberg, purporting to act on behalf of the Mango DAO ("New York Lawsuit"). (Ex. 8). Among other things, New York Lawsuit included a claim for a declaratory judgment "rescinding the settlement and release agreement and declaring it unenforceable" (*Id.* ¶88). The same day, Mango Labs filed an *Ex Parte* Application for a

3

Temporary Restraining Order and Preliminary Injunction seeking to freeze Mr. Eisenberg's funds (in violation of the Settlement Agreement). An Order to Show Cause, including a temporary restraining order, was entered by the New York court on January 30, 2023. (Ex. 9, 3/10/2024 H'rg Tr. ¶5:4-15).[3]

After briefing, and hearing on the merits, the New York court denied Mango Labs' motion for a preliminary injunction. (*Id.* at 10:7-22). The court rejected all of Defendants' arguments and found that the release provided under the Settlement Agreement between Mr. Eisenberg and the Mango DAO was enforceable. (*Id.* at 10:23-19:14).[4]

D.  **Dissolution of the Mango DAO and Disbursement of Funds from the Treasury**

Mango Markets has been largely dormant since late 2022, for a number of reasons. The October Trades discussed above identified flaws in the Mango Markets protocol. In addition, the United States Securities and Exchange Commission filed suit against the Mango DAO and Mango Labs for engaging in the unregistered offer and sale of securities, namely, the MNGO tokens.[5] Mango DAO and Mango Labs subsequently admitted liability, entered into a consent judgment, paid penalties and agreed to destroy their MNGO tokens.[6]

There has also been considerable in-fighting among the founders of Mango Markets, including a series of lawsuits in the District of Puerto Rico, accusing one another of fraud and double-dealing.[7] However, in late-December 2025 these parties suddenly announced that they had

---

[3] Defendants also sought criminal prosecution of Mr. Eisenberg, and Defendants took a role in the prosecution and trial. (Ex. 5 ¶6 (Noting that Mr. Durairaj was "heavily involved in the action against Eisenberg")). After trial, the district court overturned the jury's conviction, entering acquittal on one count and vacating the other two for lack of venue. The government has filed a pending appeal.
[4] The New York Lawsuit was stayed following denying of Mango Labs' motion. Given the absence of a nexus to New York, it is not expected that the case would proceed in that forum.
[5] https://www.sec.gov/newsroom/press-releases/2024-154 (last accessed January 15, 2026).
[6] https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26140 (last accessed January 15, 2026).
[7] https://www.dlnews.com/articles/defi/mango-markets-insiders-accused-of-dao-raid-with-mngo-buyback/ (last accessed January 15, 2026).

4

reached a settlement and ***intended to dissolve the Mango DAO***, and disburse the funds in the treasury, within thirty days, i.e., by no later than January 22, 2026. (Ex. 10). The Mango DAO treasury currently holds about $45 million (which is comprised of the funds transferred to the Mango Treasury by Mr. Eisenberg as part of the Settlement Agreement). (Ex. 6 ¶16 ("Mango DAO holds a treasury account of approximately $45 million in a variety of cryptocurrency.")). Over the past week, Defendants have begun the process of preparing the assets in the Mango Treasury for liquidation. (*See, e.g.*, Ex. 11 (proposal authorizing Mango Labs to liquidate smaller assets on behalf of the Mango DAO)).

Mr. Eisenberg initiated this case on January 12, 2026 seeking damages for (1) breach of contract, (2) unjust enrichment and (3) fraudulent inducement. If the Defendants are successful in liquidating the Mango DAO treasury prior to a resolution in this case, both Mango Markets and Mango DAO will essentially wind up and cease to do business rending any final adjudication in this matter moot. (Ex. 10 ¶1 (noting that Defendants are "work[ing] together to dissolve the Mango DAO")).

### III.   LEGAL STANDARD

A party seeking a temporary restraining order must show "(1) [he] has a substantial likelihood of prevailing on the merits; (2) [he] will suffer irreparable injury if [he] is denied the injunction; (3) [his] threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest." *Wiechmann v. Ritter*, 44 Fed. Appx. 346, 347 (10th Cir. 2002) (quoting *Country Kids' N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996)). The underlying purpose of a temporary restraining order is to preserve the "status quo" until the court can hold a preliminary injunction hearing. *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The requirements for a preliminary injunction are similar to those set forth above. *See Dominion Video*

*Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

IV.    **AN INJUNCTION SHOULD BE GRANTED**

    A.    **Plaintiff is Likely to Succeed on The Merits of His Claims**

Plaintiff easily meets the first test for the issuance of a temporary restraining order and preliminary injunction: Plaintiff has a substantial likelihood of success on the merits of his claims. Plaintiff is virtually certain to prevail on his breach of contract claim and fraudulent inducement claims, as Defendants have conceded the salient facts in other proceedings.

        1.    *The Settlement Agreement Is Valid*

The Defendants have never disputed that the Mango DAO and Mr. Eisenberg entered into the Settlement Agreement. As noted above, the complaint filed by Mango Labs in the New York Lawsuit readily admitted that the Parties entered into the Settlement Agreement and that Mr. Eisenberg performed under the agreement.

Mango Labs (who claimed that it acquired all claims relating to the October Trades) and Durairaj primarily argued that the Settlement Agreement was unenforceable because it was entered under "duress." (Ex. 8 ¶ 83). This argument was factually and legally meritless (as the New York court confirmed). As detailed above, Mango DAO *rejected* the First Proposal to settle this matter by an overwhelming majority. However, the Mango DAO voted overwhelmingly in favor of the Second Proposal—that **Mr. Durairaj drafted and presented to the Mango DAO following negotiations with Mr. Eisenberg**. This history confirms that the Mango DAO was fully capable of rejecting a proposal that they did not support (i.e., the First Proposal) and accepting one that they found be fair (i.e., the Second Proposal). There was no "duress." *See Kendrick v. Barker*, 2001 WY 2, 15 P.3d 734 (Wyo. 2001). ("Economic duress does not exist, however, unless a person has been the victim of a wrongful act and has no reasonable alternative but to agree with the terms of another or be faced with a serious financial hardship.").

In addition, duress merely renders a voidable (not void). *Dobson v. Portrait Homes, Inc.*, 2005 WY 95, ¶ 12, 117 P.3d 1200, 1205 (Wyo. 2005) ("contract may be *voidable* because of fraud, duress, mistake, or other invalidating cause"). As the New York court held, Defendants "acceptance and decision to retain (to this day) the $67 million that Plaintiff paid out in consideration for the signing of the contract likely" ratified the contract. (Ex. 9 at 17:12-24); *see E.E.O.C. v. Am. Exp. Pub. Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y. 1988) ("Contracts induced by duress are voidable, not void; acceptance of benefits under the agreement constitutes ratification."); *Indus. Recycling Sys., Inc. v. Ahneman Assocs., P.C.*, 892 F. Supp. 547, 551 (S.D.N.Y. 1995).

### 2. *Defendants Breached the Agreement*

There can also be no dispute that the Defendants breached every aspect of the Settlement Agreement. As recited above, Defendants: (1) filed a civil action against Mr. Eisenberg; (2) obtained an *Ex Parte* TRO freezing Mr. Eisenberg's funds (which was terminated by the court when the true facts were disclosed); and (3) have failed to repay all of the bad debt in the Mango Markets protocol.

Notably, during the preliminary injunction in the New York Lawsuit, the court called out the Defendants for wanting to have their cake and eat it too, i.e., retain the funds transferred to them by Mr. Eisenberg and renege on their obligations under the Settlement Agreement. (Ex. 12 at 10:13-20 ("THE COURT: So how can the money be kept? Address the tender point. From my perspective it looks like you are in a heads-I-win-tails-I-lose-type argument. You want to keep the money or the people who assigned you the claims want to keep the money but they also want to pursue the claim having released their claims. I mean, under your view of this release what did the defendant get for the money that he returned…?"). Defendants had no response. (*Id.* at 10:21-15:8 (the Court noting that Defendants' argument "sounds pretty weak to me" and that, following

7

Defendants' logic, it would be impossible to settle any claim).

*   *   *

In view of the foregoing, Plaintiff is likely to succeed on his breach of contract claim. Similarly, Plaintiff has a meritorious claim for fraudulent inducement. Defendants never had any intention of following through with the terms of the Settlement Agreement. As they later admitted, they simply viewed the agreement with Plaintiff as an interim mechanism to lull Plaintiff into returning $67 million to Defendants, while pursuing the remainder through civil and criminal proceedings. (Ex. 12, Hr'g Tr. 4:21-5:2 (New York court recognizing that Defendants could not keep the $67 million consideration paid by Mr. Eisenberg as part of the Settlement Agreement: "[H]ow you can maintain a claim in the absence of a tender back to [Mr. Eisenberg] the consideration that the [he] paid in exchange for the release?")).

### B.  Plaintiff Will Be Irreparably Harmed Absent an Injunction

Absent an injunction the assets in the Mango Treasury will be disbursed, the Mango DAO will be dissolved, and recovery on Mr. Eisenberg's claims will be impossible. As explained above, the Mango DAO is an unincorporated entity—its token holders are generally anonymous and can be anywhere in the world.

A plaintiff can suffer irreparable harm when the court is unable to grant an effective monetary remedy after a full trial because such damages would be difficult to recover. *See*, *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,* 269 F.3d 1149, 1156 (10th Cir. 2001). The Tenth Circuit has held that difficulty in collecting a damages judgment may support a claim of irreparable injury. *Tri-State Generation and Transmission Association, inc. v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir. 1986) (irreparable harm established by demonstration that absent preliminary injunction, plaintiff would be unable to collect money judgment); *see also United States ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327 (4th Cir. 1989)

(preliminary injunction preventing dissipation of assets permitted where plaintiffs allege that defendant is insolvent and where its assets are in danger of dissipation and depletion). As the 10th Circuit and other circuits have made clear, a plaintiff is entitled to an injunction to protect its remedy.

In *United States Sec. & Exch. Comm'n v. Ameristar, LLC,* No. 24-CV-169-KHR, 2024 WL 4953425 (D. Wyo. Sept. 9, 2024), the Court granted a TRO including, *inter alia*, freezing the defendant's assets, when the plaintiff showed good cause to support the assertion that the defendant might distribute or transfer from the jurisdiction assets that could be subject to an order directing disgorgement or the payment of civil money penalties. The Court held that a TRO freezing assets was appropriate "to ensure Defendants do not dissipate assets prematurely and to provide any victims with the best possibility to recover losses." *Id.* At 7.

In the present case the court does not have to guess whether Defendants plan to transfer funds that could be subject to an award as Defendants have outright stated as much. Defendants have announced their intent to disburse the funds in the Mango Treasury and are ***actively taking steps*** to consolidate assets for this distribution. Thereafter, Defendants plan to complete the winddown of Mango Markets and dissolve the Mango DAO in its entirety. Unless the Defendants are enjoined, any judgment Plaintiff may (and likely will) obtain would be worthless. Thus, Plaintiff would suffer irreparable harm in the absence of an injunction including a freeze of assets in the Mango Treasury and the continued dissolution of the Mango DAO.

### C. The Threatened Harm To The Plaintiffs Outweighs Any Injury To The Defendant From An Injunction

The potential harm to Plaintiff, should the disbursement of the assets in the Mango Treasury proceed, greatly outweighs any potential injury to the Defendants from an injunction—let alone an initial 14 day restraining order.

9

Besides the $67 million that Defendants fraudulently induced Plaintiff to transfer to the Mango DAO, Plaintiff has incurred millions in damages as a direct result of the Defendants' actions, including having to defend against claims for which they granted an express release. Should the disbursement and dissolution proceed, and the remaining assets be liquidated, Plaintiff faces the prospect of being unable to collect any potential monetary judgment against the Defendants. In contrast, the Defendants will suffer relatively little harm if the dissolution is enjoined. The assets include primarily USDC (*see* Ex. 11), a highly regulated stablecoin pegged to the United States dollar on a 1:1 basis (i.e., one USDC is intended to always be worth one U.S. dollar).

### D. An Injunction Would Not Be Adverse To The Public Interest

Finally, there is no conceivable way in which an injunction preventing the immediate distribution of the assets in the Mango Treasury would harm the public interest. On the contrary, as a first step toward holding the Defendants accountable for their actions, the issuance of an injunction preventing the liquidation of the assets would serve the public's considerable interest in the fair administration of justice. *Dykeman v. Ochoa*, No. 08-CV-122-B, 2008 WL 11411452, at *2 (D. Wyo. July 15, 2008) (in breach of contract matter, finding that "the public interest is served by assuring that the Plaintiffs recover the losses ultimately proven")

Further, the public interest is served by a TRO and asset freeze by stopping any ongoing wrongdoing and protecting assets to allow plaintiff the best chance to recover any losses determined by the court. *See Sec. & Exch. Comm'n v. End of Rainbow Partners, LLC*, No. 17-CV-02670-MSK, 2017 WL 5404199, at *2 (D. Colo. Nov. 14, 2017) (discussing that an asset freeze could advance the public interest by increasing the likelihood that ill-gotten funds are secured to satisfy a potential judgment).

In addition, Plaintiff wants to ensure that all Mango Markets users—who are not

necessarily members of the Mango DAO—were in fact made whole pursuant to the Settlement Agreement. (*See* Supra §II.B).

## V. THE COURT SHOULD PRESERVE THE STATUS QUO

Plaintiff's request to preserve the status quo for a short period of time is reasonable and warranted. As explained above, the Mango Markets platform and the Mango Treasury have been largely dormant since late 2022. The founders of Mango Markets have been fighting amongst themselves for much of that time. Maintaining the status quo until the Court can hold a hearing is justified under these circumstances. *See Biles v. Schneider*, No. 19-CV-48-F, 2019 WL 13222745, at *2 (D. Wyo. Mar. 26, 2019) ("a temporary restraining order is necessary to preserve the status quo until the Court can hold a hearing regarding Dr. Biles' request for a preliminary injunction"); *see also United States Sec. & Exch. Comm'n*, 2024 WL 4953425 at *2 ("A TRO's *ex parte* nature and short duration represent that it is designed to preserve the status quo between the parties by preventing irreparable injury until a court can rule on the merits of a preliminary injunction."); *Miller v. Austin*, 622 F. Supp. 3d 1105, 1110 (D. Wyo. 2022) ("A temporary restraining order is meant to preserve the status quo before a final decision on the merits.).

## VI. A BOND SHOULD NOT BE REQUIRED

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *See Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (providing district courts with "wide discretion under Rule 65(c)" to determine "whether to require security"). In particular, Rule 65 permits this Court to issue a temporary restraining order without bond to preserve the status quo until further order of the Court. *Snyder v. Am. Kennel Club*, 575 F. Supp. 2d 1236, 1241 (D. Kan. 2008) (a restraining order preserves the status quo until the hearing is held for the preliminary injunction, the status quo being "the last uncontested status between the parties which preceded the controversy until the outcome

11

of the final hearing"). Here, Plaintiff is aware of no harm to Defendants in maintaining the status quo—that has existed for the past three years—for a short period of time until a hearing can be held.

## VII. CONCLUSION

For the above reasons, the temporary restraining order should be granted and the Court should be set a hearing on Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

Dated: January 20, 2026

By: /s/ Caleb C. Wilkins
Caleb C. Wilkins, WSB #7-5527
Richard D. Bush, WSB #5-2647
COAL CREEK LAW LLC
P.O. Box 467
Cheyenne, WY 82003-0467
P: (307) 634-1525
F: (307) 638-7335
cwilkins@coalcreeklaw.com
tbush@coalcreeklaw.com

Mark Berkowitz (*Pro Hac Vice*)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
P: (212) 216-8000
F: (212) 216-8001
mberkowitz@tarterkrinsky.com
**Attorneys for Plaintiff Avraham Eisenberg**