# Exhibit 6

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOHN KRAMER,<br><br>    *Plaintiff,*<br><br>v.<br><br>MANGO LABS, LLC, DAFYDD<br>DURAIRAJ, and TYLER SHIPE<br><br>    *Defendants*. | CIVIL No.: 24-1587<br><br>JURY TRIAL DEMANDED |

## **<u>VERIFIED COMPLAINT</u>**

TO THE HONORABLE COURT:

COMES NOW Plaintiff John Kramer, through the undersigned legal counsel, and very respectfully states, alleges and prays as follows:

## **<u>INTRODUCTION</u>**

1.      Plaintiff brings this action against Defendants asserting that Defendants have acted intentionally and without authority to deprive Plaintiff of his property, and the right to participate in the governance of a decentralized autonomous organization known as the Mango Decentralized Autonomous Organization ("Mango DAO"). Mango DAO is an unincorporated organization composed of holders of MNGO tokens, a digital asset that was created to be the governance token for Mango DAO.

2.      The actions of Defendants constitute conversion, and a violation of 18 U.S.C. § 1030(4). As stated more fully hereinafter, this Court has subject matter jurisdiction under 28 U.S.C. § 1331, as well as 28 U.S.C. § 1332.

**THE PARTIES**

3.      John Kramer is an individual domiciled at 1508 Calle Maribel, Apt. 201, San Juan, Puerto Rico 00911, and for purposes of 28 U.S.C. § 1332 is a citizen of Puerto Rico.

4.      Defendants Mango Labs, LLC ("Labs") is, based upon information and belief, organized under the laws of Wyoming, with its principal place of business in said state, and for purposes of 28 U.S.C. § 1332 is a citizen of Wyoming.

5.      Defendant Dafydd Durairaj ("Durairaj") is an individual residing at 3014 Green Apple Drive, Dallas, North Carolina 28034, and for purposes of 28 U.S.C. § 1332 is a citizen of North Carolina.

6.      Defendant Tyler Shipe ("Shipe") is an individual residing at 4845 Ashley Park Lane, Apartment No. 402 Charlotte, North Carolina 28210, and for purposes of 28 U.S.C. § 1332 is a citizen of North Carolina.

**SUBJECT MATTER AND PERSONAL JURISDICTION**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises in significant part from a violation of two Federal laws, 18 U.S.C. § 1030(g). Plaintiff additionally asserts a conversion claim under article 1536 of the Puerto Rico Civil Code of 2020, P.R. Laws Ann., Tit. 31, § 10801, over which this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.      In addition, this Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as plaintiff is domiciled in Puerto Rico, while Defendant Labs is domiciled in Wyoming, Durairaj is domiciled in North Carolina, and Shipe is domiciled in North Carolina, and the amount in controversy, at least $12.9 million, exceeds the jurisdictional amount.

9.      This Court has personal jurisdiction over Defendants as they purposely targeted plaintiff who is domiciled in Puerto Rico, and his assets.

10.     Defendants intentionally directed their actions to Plaintiff, a Puerto Rico resident, by gaining unauthorized access to the Mango DAO's governance software for the purpose of depriving Plaintiff of the use and value of the assets. The fact that Plaintiff is a resident of Puerto Rico is widely known among the Mango DAO community. In addition, Defendant Labs filed suit against Plaintiff in Puerto Rico District Court in October, 2024, Civil No. 24-1469-GMM, and by its action Defendant Labs has submitted itself to the jurisdiction of this Court.

## GENERAL ALLEGATIONS

11.     Mango DAO[1] was organized to be the governing body of Mango Markets, a "DeFi" platform.  DeFi platforms generally are software that enables peer-to-peer cryptocurrency-based financial transactions such as lending, borrowing, and trading. The transactions on DeFi platforms occur automatically pursuant to rules and parameters programmed into the software, without human intervention. On Mango Markets, investors can engage in trading of crypto futures and other leveraged transactions. The Mango DAO controls the software that decides which tokens and types of transactions are available on Mango Markets ("Markets"), and how those transactions work. Holding a MNGO Token makes the token holder a member of Mango DAO. MNGO tokens (as all cryptocurrency tokens) are stored in a digital "wallet" belonging to the token holder (what

---

[1] "A DAO is a 'decentralized autonomous organization' which is a way to organize people, a social coordination technology that relies on blockchain-based smart contracts and incentives to facilitate collaboration and collective action.  Put differently, DAOs allow unrelated parties to use software code on a blockchain without needing a centralized coordinating authority, and permit users "to take actions to edit open-source software." *CFTC v. Ookie DAO,* No. 22-05416, Dkt No. 63 at 3 (N.D. Cal. Dec. 20, 2022) (internal citations omitted). Some DAOs are legal entities such as cooperatives, associations, foundations, or LLCs.  Other DAOs, such as the Mango DAO, are not formal legal entities.

7933313

is a "wallet" is explained further below). The token holder connects their wallet to the Mango DAO platform; the platform "sees" the token in the wallet and allows the token holder to vote on proposals made by other token holders. These rules and parameters are known as the "governance" or "governance rules" of the DAO. The standard rule is that one token equals one vote; however, members can double their voting power if they "lock" their tokens for five years. Locked tokens can be used for voting, but they cannot otherwise be used, traded or sold.

12.    MNGO Token holders have the power to modify or upgrade the Mango Markets software, as well as the Mango DAO governance software as they see fit, constrained only by the checks-and-balances of the Mango DAO governance.

13.    In accordance with its published guidelines, Mango DAO governance is meant to govern upgrades and changes to the software that runs Mango Markets, and should be limited to actions that can be implemented via computer code.[2]

14.    Notwithstanding, these published guidelines, in the last year the governance process has also been used to appoint a legal representative to represent Mango DAO's interest in cases brought against Mango DAO by the U.S. Securities and Exchange Commission (the "SEC") and the Commodities Futures Trading Commission (the "CFTC"), to approve a settlement with the SEC, and to approve a settlement offer to the CFTC, among other actions not capable of being implemented by computer code.

15.    Mango DAO has no officers, directors, or any other individual generally empowered to make a decision on its behalf, or on behalf of its members. As structured, all actions of Mango DAO must be taken by a vote of its members.

---

[2] *See* Mango DAO Litepaper at p. 6, https://github.com/blockworks-foundation/mango-docs/blob/main/litepaper.md, *last visited on December 19, 2024*, a true and correct copy of which is attached at Exhibit 1.

7933313

16.     Mango DAO holds a treasury account of approximately $45 million in a variety of cryptocurrency.

17.     Plaintiff is a holder of MNGO tokens and, as such, is a member of Mango DAO.

18.     Upon information and belief, Defendants Durairaj and Shipe are also holders of MNGO and are accordingly members of Mango DAO.

19.     Pursuant court order, discussed in more detail below, Defendant Labs should not be a holder of MNGO tokens, or a member of Mango DAO.

20.     On September 27, 2024, the SEC filed a Complaint against Mango DAO, Defendant Labs, and the Blockworks Foundation, Civil Action No. 24-civ-07334 (S.D.N.Y) (the "SEC Action").[3] The SEC Action alleged among other things that Mango DAO and Blockworks Foundation engaged in an unregistered public security offering when it issued and sold MNGO tokens; and, that Defendant Labs and Blockworks Foundation acted as unregistered brokers related to the sale of MNGO tokens and other activities.

21.     Mango DAO is also under investigation by the CFTC, and pursuant to a governance proposal approved by the members of Mango DAO, has submitted an offer to the CFTC.

22.     On October 1, 2024, a Final Judgment was entered following a negotiated settlement agreement between Defendant Labs and the SEC.  Defendant Labs was ordered, among other things, to pay a fine of $111,614.00 and to "burn" all of its MNGO tokens by October 11, 2024, that is, within 10 days of the Final Judgment. (To "burn" a token is, to put it simply, to

---

[3] *Securities and Exchange Commission v. Mango Labs, et al,* Case 1:24-cv-07334, filed 09/27/24, a true and correct copy of which is attached at Exhibit 2.

dispose of a token so that it no longer exists or can no longer be used, and if an MNGO token holder "burns" all their MNGO tokens, they necessarily are no longer a member of Mango DAO).[4]

23.    As a result of the Final Judgment entered in the SEC Action, if Defendant Labs has followed and is in compliance with the Court's Order, Defendant Labs is neither a MNGO token holder, nor a member of the Mango DAO.

24.    Three years ago, a governance proposal was passed by Mango DAO to form the "Upgrade Council" to perform certain functions relating to the governance of Mango DAO. Specifically, the Mango DAO members approved the establishment of a council comprised of seven named individuals and the digital "wallets" they control.[5]

25.    A digital wallet is a piece of hardware or software used, among other functions, to "store" digital assets and to provide a user-friendly way to store and manage the "public keys" and the "private keys" necessary to authorize transactions on a blockchain. The public key is used to access the user's blockchain "address," and it can be freely shared with others.

26.    The private key is roughly analogous to a password, and it confers the ability to authorize a transaction on the blockchain using the user's public blockchain address, often referred to as "signing" a transaction.

27.    Wallets may have a single key holder, or signatory, or they may have multiple private keys held by multiple individuals, i.e. multiple signatories, known as "multi-sig" wallets. Rules may be set for each multi-sig wallet determining how many signatories there should be, and how many of those signatories are required to "sign" a transaction. In some cases, such as for the

---

[4] *Securities and Exchange Commission v. Mango Labs, et al,* Final Order, October 1, 2024, a true and correct copy of which is attached at Exhibit 3.
[5] *See* Governance Proposal: Establish mango v 3 upgrade council, a true and correct copy of which is attached at Exhibit 4.

Upgrade Council multi-sig, those signatories are designated by issuing, or "minting" a token specific to that wallet. Those who hold a token in their wallet are able to use that token to sign transactions with the multi-sig wallet.

28.    Mango DAO members granted the Upgrade Council the authority to control upgrades of the "mango v3 program" through a majority vote <u>of its seven members</u>. Among the seven named signatories were Defendants Durairaj and Shipe.   The authority of software controlled by the wallet was subsequently expanded to include the authority to control program code errors in the "Voter Stake Registry," the software that controls the weight of each vote, among other things.   The software that the Upgrade Council controls and therefore the Upgrade Council wallet itself, is designed and used to conduct transactions with thousands of members across U.S. and around the world.

29.    The wallet named in the Mango DAO proposal as controlled by Defendant Durairaj (the "2CC Wallet") is, upon information and belief, is actually owned by Defendant Labs, a single member Wyoming limited liability company owned by Defendant Durairaj. The 2CC Wallet has routinely received payments from Mango DAO specifically designated for Defendant Labs,[6] and Defendant Labs also claims the transactions of the 2CC Wallet as its own in the Complaint filed against Plaintiff in civil action number No. 24-1469-GMM.on October 7, 2024.[7]

30.    Despite the October 1, 2024 Final Judgment entered in the SEC Action, Defendant Labs's 2CC Wallet currently holds over 93 million MNGO tokens. Accordingly, Defendant Labs

---

[6] *See e.g.,* Governance Proposal: Mango Labs Funding, a true and correct copy of which is attached at Exhibit 5.
[7] *See* Compl. ¶70 and fn 9, *Mango Labs v. Kramer, et al., 24*-cv-01469 (D.P.R.), true and correct copies of which are attached at Exhibits 6 and 6a, respectively.

7933313

and its sole member Defendant Durairaj are in contempt of the Court's October 1, 2024, Final Judgment, which required that all of its MNGO tokens be burned.

31.    The Upgrade Council exercises its authority through a multi-sig wallet. Each signatory receives a token in their designated wallet and the 2CC Wallet held one of these seven tokens.

32.    Wallets with a signatory token in them can sign transactions of the Upgrade Council multi-sig, and the Upgrade Council multi-sig can be used to authorize almost any change to the software used for Mango DAO governance.

33.    On October 7, 2024, Defendant Labs filed a Complaint against Plaintiff, Maximillian Schneider and Does 1-20, in the United States District Court for the District of Puerto Rico (Civil No. 24-1469-GMM).[8] The Complaint filed by Labs was the culmination of many months of disagreement between Kramer and Defendant Labs regarding MNGO tokens, currently valued at approximately $12.9 million, that Kramer purchased from a willing third-party seller, who, upon information and belief, had purchased them from the FTX bankruptcy estate ("Plaintiffs Tokens").

34.    Beginning on or around December 6, 2024 and ending on or around December 9, 2024, four of the Upgrade Council signatories resigned without notice or explanation, "burning" their multi-sig tokens, leaving only Defendant Labs, Defendant Shipe, and Maximillian Schneider as signatories.  Consequently, since December 9, 2024, or so, the Upgrade Council has only had three members, and because Upgrade Council actions required approval of a majority of its original seven members (i.e., actions required approval of at least four of the original seven members), since December 6, 2024, or so the Upgrade Council cannot legally approve any measure.

---

[8] *See* Compl.

35.    On December 11, 2024, now Defendant Durairaj, acting on behalf of Defendant Labs, and Defendant Shipe, who were two of the three remaining Upgrade Council signatories, grossly exceeded their authority and used the Upgrade Council multi-sig to intentionally deprive Plaintiff of the use and value of his property. As Defendant Durairaj announced in the Mango DAO governance discord chat (the "December 11 Announcement"), Defendants took two actions: (1) freezing and nullifying Plaintiff's tokens "until a settlement or court order requires their release;" and, (2) granting a wallet controlled, upon information and belief, by Defendant Durairaj, eight times more voting power than it is entitled to under normal governance measures so that he can defeat governance proposals he disapproves of, and pass any proposals he desires.  This action far exceeded the use for which the Upgrade Wallet was authorized, and was made without the requisite members.[9]

36.    In the December 11 Announcement, Defendant Durairaj, in addition to other falsehoods, stated "the Council acted today because the attackers gained an unassailable bloc of raw voting power."  This is patently and demonstrably false; several proposals made by Plaintiff in recent weeks did not receive enough votes from Mango DAO members to pass, or were only defeated with the additional voting power Defendants granted to Defendant Durairaj on December 11, 2024, which unequivocally demonstrates that no such "unassailable bloc of raw voting power" exists. For example, Plaintiff made a proposal that was defeated on December 9, 2024 to have the DAO buy back MNGO Tokens (excluding his own).  In addition, Plaintiff made several governance proposals with the goal of bringing the Upgrade Council back up to the full seven members originally authorized by the Mango DAO members. None of these proposals obtained

---

[9] A true and correct copy of this statement is attached as Exhibit 8.

the necessary votes to pass, as Defendant Durairaj used his recently self-granted 8x voting power to defeat them.[10]

37.     Defendants have continued to abuse their fraudulently obtained power. With the additional voting power wrongfully granted to Durairaj and the nullification of Plaintiff's tokens, Durairaj now has unstoppable power over the DAO, the DAO software, and the DAO's approximately $45 million. On December 19, 2024, Defendant Labs proposed to clawback several grants of MNGO that had been granted to members for services rendered to the DAO, and to burn (destroy) the tokens once clawed back.[11] The proposal claims that this is a necessary action for the DAO to comply with the settlement agreement and final order resolving the SEC's dispute against the DAO, which has a provision similar to that in the Defendant Labs final order requiring the DAO to burn all MNGO in its control; however, upon information and belief, counsel representing the DAO has stated this action is not required to comply with the order. Notably, a similar proposal by Defendant Labs made several months ago was defeated without Plaintiff deploying his so-called "unassailable bloc [sic]" of votes.[12]

38.     Also notable is that this proposed action would significantly decrease the voting power of another leading voice in the DAO, CyberByte sp. z.o.o. ("CyberByte"), who had been elected by the DAO to serve as the DAO representative in the cases brought by the SEC and CFTC. Upon information and belief, CyberByte was elected to represent the DAO because the DAO members were concerned that Labs and Durairaj had a conflict of interest and wouldn't be

---

[10] *See* Governance Proposals: Replace Burned Council Tokens; Replace More Burned Council Tokens; Replace 4th Burned Token, true and correct copies of which are attached at Exhibits 7a, 7b, and 7c, respectively.

[11] *See* Governance Proposal: SEC Compliance, a true and correct copy of which is attached at Exhibit 9.

[12] *See* Governance Proposal: SEC Settlement Compliance, Clawback MNGO Grants, a true and correct copy of which is attached at Exhibit 10.

7933313

appropriate representatives. According to the governance proposal electing him, CyberByte's term as representative expires January 5, 2025. In the normal course, the DAO would have new governance proposal to either extend his term, or elect a new representative. Given that Mango Labs has neutered his opposition, it is anticipated that Mango Labs, and/or Durairaj will become the representative of the DAO, with unfettered power to bind the DAO to a settlement (or to withdraw the current settlement offer) with the CFTC, regardless of the desires of the remaining DAO members.

39.    Defendants' actions have caused concerns that any MNGO Tokens deposited to participate in DAO governance are subject to conversion, and significant numbers of MNGO Tokens have been withdrawn from DAO governance. As fewer and fewer members are willing to endanger their MNGO Tokens to try have a voice, Defendants' power over the DAO becomes absolute.

## **COUNT ONE**

40.    Plaintiff repeats the allegations contained in Paragraphs 1 through 39 of the Complaint as if set forth in full and at length herein.

41.    Defendant Labs has filed its Complaint in the United States District Court for the District of Puerto Rico in civil action 24-1469-GMM asserting various claims against Plaintiff herein. Rather than awaiting a decision in that action or applying for relief in that action pending its resolution, Defendants instead engaged in extralegal and ultra vires self-help actions that exceed their authority to access the Mango DAO governance software. The intentional improper actions are meant to deprive Plaintiff of the rights and value of his property, specifically including Plaintiff's MNGO tokens.

7933313

42.     The actions of Defendants were taken knowingly and with the intent to defraud Plaintiff.

43.     The actions of Defendants include accessing a protected computer without authorization, or exceeding authorized access, and by means of such conduct as stated aforesaid furthering the intended fraud.

44.     The actions of Defendant have deprived Plaintiff of value and have resulted in value to Defendants, including but not limited to enabling Defendants to prevent Plaintiff from voting on Mango DAO proposals as a member of Mango DAO, and preventing Plaintiff from selling his tokens valued at approximately $12.9 million.

45.     The actions of Defendants constitute fraud by computer intrusion and are a violation of 18 U.S.C. §1030(a)(4).

46.     The actions of Defendants have caused harm, including financial harm, to Plaintiff, for which Defendants are liable.

1830, and in view thereof, plaintiff requests, pursuant to 18 U.S.C. § 1030(g)

A.     A Temporary Restraining Order returning the parties to the *status quo ante* by directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's MNGO Tokens or otherwise violates federal law or any existing Court Order;

B.     A Preliminary Injunction directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement, and any subsequent actions undertaken by Defendants, and enjoining

7933313

Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

C.      A Permanent Injunction directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

D.      Compensatory damages in an amount according to proofs at trial, which are estimated at a sum no less than $12,900,000;

E.      Punitive damages in an amount to be determined at trial;

F.      An award of reasonable attorney's fees, expenses, and costs of suit; and

G.      Such other and further relief as the Court deems just and proper, including such equitable or injunctive relief as permitted by law.

## <u>COUNT TWO</u>

47.     Plaintiff repeats the allegations contained in all of the preceding paragraphs of the Complaint as if set forth in full and at length herein.

48.     The Defendants engaged in an illegal agreement and conspiracy, the object of which was to defraud and to deprive the plaintiff of the use and enjoyment of his MNGO tokens through the unauthorized and the exceeding of authorized access of a protected computer.

49.     The Defendants illegally conspired and agreed to knowingly act with the intent to defraud Plaintiff.

7933313

50.     The actions to which Defendants illegally conspired and agreed include agreement and conspiracy to access a protected computer without authorization, or exceeding authorized access, and by means of such conduct as stated aforesaid furthering the intended fraud.

51.     The Defendant illegally conspired and agreed to deprive Plaintiff of value and to accrue value to Defendants, including but not limited to enabling Defendants to prevent Plaintiff from voting on Mango DAO proposals as a member of Mango DAO.

52.     The illegal conspiracy and agreement of Defendants constitute conspiracy to commit fraud by computer intrusion and constitute a violation of 18 U.S.C. § 1030(b).

The illegal agreement and conspiracy of Defendants have caused harm, including financial harm, to Plaintiff, for which Defendants are liable. Accordingly, and in light of the above, plaintiff requests, pursuant to 18 U.S.C. § 1030(g):

A. A Temporary Restraining Order returning the parties to the *status quo ante* by directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and any subsequent actions undertaken by Defendants, and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

B. A Preliminary Injunction directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement, and any subsequent actions undertaken by Defendants and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

7933313

C.   A Permanent Injunction directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and any subsequent actions undertaken by Defendants and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

D.   Compensatory damages in an amount according to proofs at trial, which are estimated at a sum no less than $12,900,000;;

E.   Punitive damages in an amount to be determined at trial;

F.   An award of reasonable attorney's fees, expenses, and costs of suit; and

Such other and further relief as the Court deems just and proper, including such equitable or injunctive relief as permitted by law.

## COUNT THREE

53.    Plaintiff repeats the allegations contained in all of the preceding paragraphs of the Complaint as if set forth in full and at length herein.

54.    Defendants have maliciously and wrongfully deprived Plaintiff of his ownership rights over, and/or illegally exercised or assumed authority over his MNGO tokens.

55.    The actions of Defendants constitute conversion of Plaintiff's property.

56.     The actions of Defendants have caused harm, including financial harm, to Plaintiff, for which Defendants are liable. Accordingly, and in light of the above, plaintiff requests:

A.   pursuant to Fed. R. Civ.P. 65A Temporary Restraining Order returning the parties to the *status quo ante* by directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and any subsequent

actions undertaken by Defendants and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

B.  A Preliminary Injunction directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and any subsequent actions undertaken by Defendants and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

C.  A Permanent Injunction directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and any subsequent actions undertaken by Defendants and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order;

D.  Compensatory damages in an amount according to proofs at trial, which are estimated at a sum no less than $12,900,000;

E.  Punitive damages in an amount to be determined at trial;

F.  An award of reasonable attorney's fees, expenses, and costs of suit; and

G.  Such other and further relief as the Court deems just and proper, including such equitable or injunctive relief as permitted by law.

7933313

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby asserts his right to a trial by jury on all Counts so triable.

WHEREFORE, plaintiff hereby prays that for the reasons asserted herein, this Honorable Court grant the relief requested in Counts One, Two and Three.

**VERIFICATION**

JOHN KRAMER, of full age, hereby certifies as follows:

1. I am the Plaintiff in the foregoing Verified Complaint and the allegations set forth therein are true to the best of my knowledge, information, and belief.

2. Said Complaint is made in good faith and without collusion for the causes set forth therein.

3. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
JOHN KRAMER

Dated:  December  23, 2024
In Wausau, Wisconsin, this 23rd day of December, 2024.

Respectfully submitted,

**S/ FRANCISCO E. COLÓN-RAMÍREZ**
Francisco E. Colón-Ramírez, Esq.
Bar No.: 210510

E-mail: fecolon@colonramirez.com

**COLÓN RAMÍREZ LLC**
PO Box 361920
San Juan, PR 00936-1920
Tel.: (888) 223-2364
Fax: (787) 425-4731

17

7933313