Exhibit 9

N3ABLABD

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MANGO LABS, LLC,,

4                   Plaintiff,

5           v.                          23 Civ. 665 (LJL)

6   AVRAHAM EISENBERG,

7                   Defendant.
                                        Decision
8   ------------------------------x
                                        New York, N.Y.
9                                       March 10, 2023
                                        10:00 a.m.
10
    Before:
11
                        HON. LEWIS J. LIMAN,
12
                                        District Judge
13

14                          APPEARANCES

15  MORRISON & FOERSTER, LLP
         Attorneys for Plaintiff
16  BY:   JOSEPH A. LAWRENCE
         MICHAEL BURSHTEYN
17

18  TARTER KRINSKY & DROGIN, LLP
         Attorneys for Defendant
19  BY:   MARK BERKOWITZ
         RICHARD J. LOMUSCIO
20

21

22

23

24

25

N3ABLABD

1          (Case called; appearances noted)

2          THE COURT:  Good morning.  All right.  I'm prepared to

3    give you my decision, which I will do orally.

4          Plaintiff moves for a preliminary injunction enjoining

5    the Defendant (as well as Defendant's agents, servants,

6    employees, attorneys, and other persons who are in active

7    concert or participation with defendant, his agents, servants,

8    employees, and attorneys) during the pendency of this action

9    from selling, liquidating, transferring, pledging, or otherwise

10   encumbering the $47 million dollars' worth of digital assets

11   that defendant allegedly converted from Mango Markets

12   hereafter, the "Requested Preliminary Injunction" dkt. No. 6.

13   A temporary restraining order enjoining defendant, his agents,

14   servants, employees, and attorneys from selling, liquidating,

15   transferring, pledging, or otherwise encumbering these assets

16   is currently in effect against defendant and expires today.

17   Dkt. No. 27.

18          The complaint in this action was filed by Plaintiff

19   against defendant on January 25, 2023.  Dkt. No. 1.  The

20   allegations in the Complaint stem from an alleged October 11,

21   2022 attack by the Defendant on Mango Markets, in which he

22   manipulated the value of the Mango (MNGO) token, and through

23   fraud and deception converted approximately $114 million of the

24   funds of Mango Market depositors into his own accounts.  Id.

25   paragraph 3.  Defendant then, pursuant to a settlement

N3ABLABD

agreement with Mango Decentralized Autonomous Organization

("Mango DAO"), returned approximately $67 million of the money

he converted to depositors (the "Settlement Agreement").  Id.

paragraph 4.  He currently retains the remaining $47 million he

allegedly unlawfully converted.  Id.

After the incident at issue, Mango Markets depositors

who lost assets as a result of defendant's alleged attack

agreed to assign over 90% of their claims to Plaintiff.  Id.

paragraph 52.  In return for assigning their claims, Mango DAO

provided depositors the amount of remaining funds that they

lost from defendant's alleged attack, which were paid from the

Mango DAO insurance fund.  Id.  paragraphs 48-49.

The complaint alleges four causes of action against

the Defendant.  Id.  paragraphs 59-88.  The first cause of

action is for conversion based on defendant allegedly

improperly converting cryptocurrency from Mango Markets'

depositors to the exclusion of their rights as rightful owners.

Id.  paragraphs 59-65.  The second cause of action is for

fraudulent misrepresentation based on allegations that

defendant made a series of false representations to Mango

Markets depositors that they relied on, which enabled him to

get away with his unlawful acts.  Id.  paragraphs 66-74.  The

third cause of action is for unjust enrichment.  Id.

paragraphs 75-81.  The fourth cause of action is for a

declaratory judgment that the settlement agreement entered into

N3ABLABD

1   between Defendant and the Mango DAO was procured under duress.

2   Id. paragraphs 82-88.

3         The U.S. Attorney's Office for the Southern District

4   of New York filed a criminal complaint against defendant

5   related to the same conduct at issue in this lawsuit, and

6   defendant is currently detailed pending trial in New York.  Id.

7   paragraphs 5.  The indictment filed against Defendant provides:

8   As a result of committing the offense alleged in Count Three of

9   this Indictment, Avraham Eisenberg, the defendant, shall

10  forfeit to the United States, pursuant to Title 18, United

11  States Code, Section 981(a)(1)(C) and Title 28 United States

12  Code, Section 2461(c), any and all property, real and personal,

13  that constitutes or is derived from proceeds traceable to the

14  commission of said offense, including but not limited to a sum

15  of money in United States currency representing the amount of

16  proceeds traceable to the commission of said offense.

17        That's Case No. 23-cr-00010, Dkt. No. 4, paragraph 28.

18  The indictment also contains a forfeiture allegation which

19  provides that if any of the forfeitable property cannot be

20  located or has been transferred or sold to a third person,

21  placed beyond the jurisdiction of the Court, or substantially

22  diminished in value, it is the intent of the United States to

23  seek forfeiture of any other property of the defendant up to

24  the value of the above forfeitable property.  Id.  Paragraph

25  29.  Defendant is also being sued by the Commodities Futures

N3ABLABD

1  Trading Commission and the Securities and Exchange Commission

2  in two separate civil actions related to the conduct at issue

3  in this lawsuit.  Dkt. No. 1, paragraph 5.

4       On the same date that the plaintiff filed its

5  complaint in this action, plaintiff moved for a temporary

6  restraining order and a preliminary injunction.  Dkt. No. 7.

7  The Court held a hearing on this request on January 30, 2023.

8  Neither defendant nor counsel for defendant appeared at the

9  hearing.  Following the conference, the Court entered a

10 temporary restraining order enjoining defendant, his agents,

11 servants, employees, attorneys, and other persons who are in

12 active concert or participation with defendant, his agents,

13 servants, employees, and attorneys from selling, liquidating,

14 transferring, pledging, or otherwise encumbering the assets.

15 Dkt. No. 27 at 2.

16      The Court also ordered the defendant to show cause

17 before the Court on February 10, 2023 why an order should not

18 be issued pursuant to Rule 65 of the Federal Rules of Civil

19 Procedure entering the requested preliminary injunction. The

20 Court also ordered plaintiff to serve defendant or his counsel

21 by email and overnight mail on or before February 1, 2023, and

22 to endeavor to make personal service on the defendant upon his

23 arrival in the Southern District of New York.  The Court

24 further ordered plaintiff to serve a copy of the order along

25 with relevant papers on the assistant U.S. attorneys in the

N3ABLABD

1    criminal case against defendant by February 1, 2023.

2           Counsel appeared in this action on behalf of defendant

3    on February 9, 2023.  Dkt. Nos. 28-29.  On the same day,

4    defendant filed a letter requesting an adjournment of the show

5    cause hearing scheduled for February 10, 2023, and noted that

6    plaintiff did not oppose the request.  Dkt. 30.  Defendant also

7    consented to an extension of the temporary restraining order

8    until the show cause hearing was held. The Court approved the

9    request on February 9, 2023, and set the show cause hearing for

10   February 24, 2023.  Dkt. No. 31.  Defendant filed a memorandum

11   of law and declaration in opposition to the request for a

12   preliminary injunction on February 15, 2023.  Dkt. Nos. 35-36.

13   On February 22, 2023, Plaintiff filed a reply memorandum of law

14   and declaration in support.  Dkt. Nos. 37-38.

15          The Court held the show cause hearing on February 24,

16   2023.  Plaintiff notified the Court that it had provided notice

17   of the proceeding to the U.S. Attorney's Office and the U.S.

18   Attorney's Office chose not to intervene and did not express a

19   position on the request.  At that conference, the parties

20   agreed to an extension of the temporary restraining order

21   previously entered by the Court until the date of the present

22   conference.

23          Let me now discuss the request for the injunction.

24   I'm going to start with standing.

25          In addressing the merits of whether the Proposed

N3ABLABD

Preliminary Injunction should issue, the Court first rejects

Defendant's argument that Mango Labs has not offered evidence

that it has standing to file this suit.

"In general, claims or choses in action may be freely

transferred or assigned to others'; however, in order to make

that assignment valid, 'the owner must manifest an intention to

make the assignee the owner of the claim." *Sonterra Cap.*

*Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257,

262-63 (S.D.N.Y. 2019) (quoting *Advanced Magnetics, Inc. v.*

*Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997)).

"Where a valid assignment has been executed, the assignee is

the real party in interest and the right to sue is exclusively

the assignee's." Id. at 263.  Accordingly, an assignment of

claims allows the assignee to "stand in the place of the

injured party' and satisfy constitutional standing

requirements." *Cortlandt St. Recovery Corp. v. Hellas*

*Telecommunications, S.a.r.*l, 790 F.3d 411, 418 (2d Cir. 2015)

(citation omitted).

In this case, plaintiff has made a sufficient showing

that it has standing as an assignee of the depositors' claims.

After defendant's alleged attack, Mango DAO presented

depositors with an agreement in which they agreed to "assign

[their] claims to Mango Labs LLC." Dkt. Nos. 9-3 at 2.  A

declaration from Dafydd Durairaj, a founder at Mango Labs,

states that "depositors who lost assets as a result of

N3ABLABD

defendant's attack have agreed to assign over 90% of their
claims to Mango Labs to obtain the refund."  Dkt. No. 9 at 5.
Plaintiff thus has standing as the assignees of these
depositors' claims.

In reaching this conclusion, the Court rejects
defendant's argument that the settlement agreement between
Mango DAO and defendant purportedly releasing all claims
against defendant precludes the Court from finding that
plaintiff has standing.  In its fourth cause of action,
plaintiff seeks to have that settlement agreement declared
invalid.  If it is successful in obtaining that relief and on
its remaining causes of action, plaintiff will be entitled to a
monetary judgment against defendant for allegedly
misappropriating its depositors' remaining $47 million in
funds.  Standing in the place of the depositors, plaintiff thus
has demonstrated the existence of an injury in fact which a
favorable decision would redress.

The Court will now turn to the question of whether the
proposed preliminary injunction should be granted.

As a preliminary matter, the Court assumes that New
York law applies to questions of contract formation and
interpretation, as the parties apply New York law to these
questions in their briefs.  Dkt. No. 7 at 12-13; Dkt. No. 35 at
7; see *Pac. Indem. Co. v. Kiton Corp.*, 2022 WL 4237092, at *2
(S.D.N.Y. Sept. 14, 2022) ("The parties' briefs assume that New

N3ABLABD

York law controls, and such implied consent is sufficient to
establish choice of law." (quoting *Krumme v. WestPoint Stevens,
Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

"A preliminary injunction is an extraordinary remedy
never awarded as of right." *Winter v. Nat. Res. Def. Council,
Inc.*, 555 U.S. 7, 24 (2008). "A party seeking a preliminary
injunction must demonstrate (1) a likelihood of success on the
merits or sufficiently serious questions going to the merits to
make them a fair ground for litigation and a balance of
hardships tipping decidedly in the plaintiff's favor'; (2) a
likelihood of irreparable injury in the absence of an
injunction; (3) that the balance of hardships tips in the
plaintiff's favor; and (4) that the public interest would not
be disserved by the issuance of an injunction." *Benihana, Inc.
v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)
(alterations in original) (quoting *Salinger v. Colting*, 607
F.3d 68, 79-80 (2d Cir. 2010)).

The party seeking a preliminary injunction bears the
burden of demonstrating that the various factors justify
relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto
Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 441
(1974). "A showing of irreparable harm is the single most
important prerequisite for the issuance of a preliminary
injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559
F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation

N3ABLABD

omitted).  "To satisfy the irreparable harm requirement, {a

party} must demonstrate that absent a preliminary injunction it

will suffer an injury that is  neither remote nor speculative,

but actual and imminent, and one that cannot be remedied if a

court waits until the end of trial to resolve the harm."  Id.

(citations omitted).

          As to the first factor, the Court concludes that

plaintiff has not demonstrated a likelihood of success on the

merits.  Before plaintiff could obtain a judgment in its favor

on any of its three causes of action in its complaint,

plaintiff would need to obtain a judgment in its favor on its

fourth cause of action--that the settlement agreement between

defendant and Mango token holders is invalid.  That is because

in that Settlement Agreement (titled "Replay Bad Debt #2"), the

Mango token holders agreed to "waive any potential claims

against account holders with bad debt."  Dkt. No. 9  paragraph

12.  And, "under New York law, a valid release constitutes a

complete bar to an action on a claim which is the subject of

the release."  *Interpharm, Inc. v. Wells Fargo Bank, Nat.

Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (quoting *Centro

Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952

N.E.2d 995, 1000 (N.Y. 2011)).

          Plaintiff argues that this settlement agreement is

invalid or otherwise does not bar its current claims against

defendant for a few reasons.  First, it argues that the

N3ABLABD

settlement agreement is unenforceable as it does not name the defendant.  Dkt. No. 47 at 8.

The Court disagrees.  New York law does not require a release to specifically name or identify the persons to be discharged.  See *Wells v. Shearson Lehman/Am. Exp., Inc.*, 526 N.E.2d 8, 12 (N.Y. 1988).  Instead, the release need only identify the parties with "reasonable certainty."  10 Williston on Contracts § 29:8 (4th ed. May 2022 update); Restatement Second of Contracts § 131 (1981) (noting that parties to a contract need not be specifically named as long as they are "reasonably identified").

Here, this requirement appears to be met.  The settlement agreement is directed "to" the "controller of the wallet" and then lists a specific wallet identification key. Dkt. No. 9-2 at 3.  Plaintiff does not dispute that the controller of that wallet is identifiable as the defendant. Thus, the agreement appears to identify the defendant with reasonable certainty, even if not by name.

Second, plaintiff argues that its current claims against the defendant are not subject to the waiver in the settlement agreement because the agreement does not waive claims against the defendant, but merely waives "potential claims against accounts with bad debt."  The phrase "bad debt," interpreted in the context of the broader agreement and the events that led to the agreement appears to refer to the money

N3ABLABD

that defendant allegedly unlawfully obtained from Mango

depositors.  The title of the agreement is "Repay Bad Debt" and

details the assets/amounts of those assets the defendant has

"agreed to return."  Dkt. No. 9-2 at ECF p.3.

Thus, in agreeing to waive claims against accounts

with "bad debt," Mango token holders, at a minimum, appear to

have agreed to waive any claims against any accounts holding

the money that was allegedly unlawfully taken from Mango

Markets depositors.

Although it is true that plaintiff's current claims

are directly against the defendant and not any particular

"accounts," plaintiff's claims are indirectly against "accounts

with bad debt."  The purpose of the instant lawsuit is to

obtain a judgment which would entitle plaintiff to the $47

million the defendant allegedly misappropriated from its

depositors -- i.e., the "bad debt."  In fact, these are

precisely the assets that defendant seeks to freeze through a

preliminary injunction.  The Court therefore is not convinced

that this provision should be read so narrowly as not to apply

to plaintiff's claims. See *Atlas Partners, LLC v.*

*STMicroelectronics, Int'l N.V.*, 2015 WL 4940126, at *5

(S.D.N.Y. Aug. 10, 2015) ("a contract should not be interpreted

to produce a result that is absurd.") The Court also finds it

hard to believe that the parties intended for the agreement

only to waive claims against accounts and not the holders of

N3ABLABD

1  those accounts.

2          Third, plaintiff argues that the settlement agreement

3  is invalid because it does not detail what claims are settled

4  and because the parties to the agreement did not "know the

5  extent of Defendant's fraud and all potential claims at the

6  time of the vote." Dkt. No. 37 at 10. But, under New York

7  law, a release need not list the specific claims that it

8  settles and may instead use broad language, as the settlement

9  agreement did here, waiving "all potential claims." *Travelers*

10 *Home & Marine Ins. Co. v. Fiumara*, 82 N.Y.S.3d 502, 504 (2d

11 Dep't 2018). Courts have held that such language waives not

12 only known but also unknown claims. Id. In addition, a

13 releasor need not be "subjectively aware" of the precise claim

14 he or she is releasing "at the time of execution of the

15 release" in order for the release of the claim to be valid.

16 *Mergler v. Crystal Properties Assocs., Ltd.*, 1583 N.Y. 2d

17 229, 232 (1st Dep't 1992).

18         Fourth, plaintiff argues that the settlement

19 agreement, which was entered into between Mango token holders

20 and Defendant, cannot bar the claims of Mango Markets

21 depositors on whose behalf Plaintiff brings its current claims

22 and who did not vote in favor of the Settlement Agreement. In

23 support of this argument, they also state that the class

24 depositors do not precisely overlap with the class of Mango

25 token holders. Dkt. No. 46 at 1. According to Plaintiff,

N3ABLABD

depositors hold accounts on Mango Markets with a mix of

different tokens.  Id.  Token holders, on the other hand, refer

to wallet addresses which hold Mango tokens anywhere on the

blockchain and who may use those tokens to vote in Mango DAO

proposals.  Id.  Only 31.52% of mango market depositors were

also Mango token holders at the time of the attack.  Id.

Plaintiff also notes that "[t]here is no agreement by which the

Depositors consented to be bound by votes of Mango DAO

members."  Id. at 2.

        However, while Plaintiff points out that there is no

agreement between the depositors to be bound by a vote of Mango

DAO members, plaintiff fails to address or even mention the

fact that the Mango Markets governance structure–prominently

featured on its website–provides that a majority of Mango token

holders have the right to propose and vote on binding actions

regarding Mango Markets future.  Mango Markets states on its

website that owning a Mango token gives owners "voting rights

on proposals to dictate Mango Markets future."  Dkt. No. 42-2

at 2.  It further provides that "anybody with 0.1% of Mango

Token staked can propose a governance action," that such

proposals are "executable code, not suggestions for a team  or

foundation to implement," and "if a majority, and at least 2%

of the total Mango Token supply are cast for the proposal, it

can be implemented after 2 days."  Dkt. No. 42-1 at 7.

        Here, the settlement agreement appears to have passed

N3ABLABD

via this governance process.  Approximately 473 million votes
were cast in favor of the agreement, an overwhelming majority
of the approximately 500 million Mango tokens in circulation.
Dkt. No. 41 at 2-3.  Mango DAO also later described the
agreement as having been approved through this governance
process.  In the agreement Mango DAO entered into with
depositors in which they agreed to assign their claims to
plaintiff, Mango DAO wrote "claim your lost tokens as approved
by the DAO vote."  Dkt. No. 9-3 at 2.

        While depositors may not have expressly manifested
their intent to be bound by this governance procedure and the
decisions of the Mango token holders, a user of a website-such
as the depositors may assent to the terms and conditions of a
website "merely by his or her use of the website" "as long as
there is some form of reasonably conspicuous notice," *Plazza v.
Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018).  And
plaintiff does not claim that these terms were hidden or
difficult to find.

        Here, Mango depositors' decisions to open accounts and
deposit coins on Mango Markets' platform could constitute such
consent.  Thus, based on the evidence and arguments in front of
the Court at this time, it does not appear more likely than not
that the depositors will be found not to be bound by the vote
of the Mango token holders as to the release of all claims.

        For these reasons, plaintiff has not met its burden of

N3ABLABD

showing that the settlement agreement does not cover or apply
to its claims at issue in the lawsuit.  Thus, the next question
is whether the contract or release is void due to duress, as
plaintiff argues.

"To void a contract on the ground of economic duress,
the complaining party must show that its agreement was procured
by means of (1) a wrongful threat that (2) precluded the
exercise of its free will."  *Interpharm, Inc. v. Wells Fargo
Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011).  Even
assuming that the settlement agreement here was precured by a
wrongful threat, the evidence does not support that it was
procured by means that precluded the exercise of free will.  As
an illustration of their free will, Mango token holders were
presented with an initial proposed from defendant and rejected
it.  Dkt. No. 35 at 7.  It is also not clear why Mango token
holders could not have rejected the proposal and instead sued,
as plaintiff does here.  See *Austin Instrument, Inc. v. Loral
Corp.*, 272 N.E.2d 533, 535 (N.Y. 1971) (party claiming duress
must show that "ordinary remedy of an action for breach of
contract would not be adequate.")

The evidence also indicates that even if the evidence
supported that the settlement agreement was originally obtained
by duress, it was later ratified, and therefore is not void.
"A party may ratify a contract or release entered into under
duress by intentionally accepting benefits under the contract

N3ABLABD

1    by remaining silent or acquiescing in the contract for a period

2    of time after he has the opportunity to avoid it; or by acting

3    upon it, performing under it, or affirmatively acknowledging

4    it." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655

5    F.3d 136, 142 (2d Cir. 2011).

6            In this case, the three-month delay between when the

7    settlement agreement was entered into and when plaintiff

8    brought suit likely did not ratify the contract.  See *KiSKA*

9    *Const. Corp.US v. G & G Steel, Inc*., 2005 WL 1225944, at *7

10   (S.D.N.Y. May 20, 2005) ("In the present case, I find that

11   *KiSKA* acted sufficiently promptly by repudiating the Settlement

12   Agreement less than two months after signing it.").  However,

13   the depositor's acceptance and decision to retain (to this day)

14   the $67 million that Plaintiff paid out in consideration for

15   the signing of the contract likely did.  "It is well

16   established that where money paid is consideration for release

17   acquired by fraud or duress is retained after the releaser

18   becomes aware of the fraud or the duress is removed,

19   ratification may be found." *Gupta v. Headstrong, Inc*., 2019 WL

20   4256396, at *5 (S.D.N.Y. Sept. 9, 2019) (declining to find

21   contract void for duress because "*Gupta* never retained the

22   $7,000 lump sum payment that he received pursuant to the

23   agreement"); *Brown v. City of S. Burlington, Vt*., 393 F.3d 337,

24   344 (2d Cir. 2004)

25            ("In order to avoid a finding of ratification where

N3ABLABD

consideration has been paid, it is essential that the releasor

tender back the sum received. The rule requiring the tender of

consideration received, as a condition to rescission of a

contract such as a release, is said to be a general principle

of the common law of contracts.")

In its reply brief, plaintiff also argues that the

settlement agreement is void because defendant fraudulently

induced Mango DAO members to vote for the agreement.

Specifically, plaintiff argues that defendant omitted material

information that he manipulated the Mango token price on other

exchanges by using a Ukrainian woman's passport and omitted

that he had future plans to attack Mango Markets.  Dkt. No. 37

at 6.  This argument, however, is unconvincing for a few

reasons.

First, the theory for why the contract should be

declared void is not in the complaint.  See *Inspired Cap., LLC*

*v. Conde Nast*, 2018 WL 6173712, at *5 (S.D.N.Y. Nov. 26, 2018),

aff'd, 803 F. App'x 436 (2d Cir. 2020) (declining to consider

allegations not in complaint).

Second, "where a plaintiff, as here, seeks to show

fraud by omission, it must prove additionally that the

defendant had a duty to disclose the concealed fact." *Merrill*

*Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181

(2d Cir. 2007).  Plaintiff does not indicate what duty required

defendant to disclose either of these facts, nor is one

N3ABLABD

1    evident.

2            For these reasons, the release in the settlement

3    agreement does not appear to be void either for duress or

4    fraudulent inducement; and therefore plaintiff has not met its

5    burden of showing that it is likely to succeed on the merits or

6    a sufficiently serious question going to the merits as to its

7    claim for declaratory relief exists.  Because the issue of

8    whether the waiver covers plaintiff's claims and is valid is a

9    preliminary issue; and if proven in the affirmative, would

10   preclude plaintiff's remaining claims, defendant has also

11   failed to show a likelihood of success or a sufficiently

12   serious question going to the merits as to its remaining claims

13   against defendant.  Accordingly, the first factor weighs

14   against a grant of a preliminary injunction.

15           The second factor -- the likelihood of irreparable

16   harm—similarly weighs against the grant of a preliminary

17   injunction.  As noted, this is the most important factor in

18   determining whether a preliminary injunction should issue.

19   Even accepting that plaintiff had a good reason to wait until

20   the criminal action against defendant was filed to bring this

21   action, plaintiff has failed to demonstrate that a final

22   monetary judgment in its favor at the end of the case would be

23   insufficient to protect its interests if it prevailed.

24   Plaintiff seeks only money damages and "as a general rule, of

25   course, a party may not obtain injunctive relief where it is

N3ABLABD

1   claiming a loss that can be adequately remedied by an award of

2   money damages." *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416

3   (2d Cir. 1985).

4            Although it is true that "federal courts have found

5   preliminary injunctions appropriate where it has been shown

6   that the defendant intended to frustrate any judgment on the

7   merits by transferring its assets out of the jurisdiction," *In*

8   *re Feit & Drexler Inc.*, 760 F.2d 406, 416 (2d Cir. 1985),

9   plaintiff proffers little evidence that defendant intends to

10  frustrate the judgment in this case.

11           Defendant is currently incarcerated and held without

12  bail.  There is a request for forfeiture of these same assets

13  in the criminal case.  The indictment in the criminal case

14  seeks forfeiture of all property derived from the commission of

15  the instant offense.  At the February 24, 2023 conference,

16  defendant's attorneys stated that "the asset forfeiture in the

17  criminal matter is broader than what could be entered in this

18  case, and the defendant is not going to violate that or think

19  about violating that."  Dkt. No. 47 at 33.

20           The only actual evidence that plaintiff points to of

21  defendant attempting to frustrate the present judgment is that

22  after the present lawsuit was filed, "a transaction occurred

23  involving a blockchain wallet address Mango Labs identified as

24  under defendant's control."  Dkt. No. 25 at 2.  However,

25  defendant represents that it was "an automated transaction that

N3ABLABD

1    took place" and plaintiff does not appear to contest this.

2    Dkt. No. 47 at 33.

3         The Court also pauses to note that in light of the

4    criminal case against defendant regarding this same conduct,

5    plaintiff's rights to the assets it seeks to freeze are unclear

6    at this point in time.  The statutory provision governing

7    criminal forfeiture provides that: "all right, title, and

8    interest in property described in subsection (a) vests in the

9    United States upon the commission of the act giving rise to

10    forfeiture under this section."  21 U.S.C. § 853(c).

11        Subsection (a) of that provision provides that a

12    person punishable by imprisonment for more than one year shall

13    forfeit to the United States: "any property constituting, or

14    derived from any proceeds the person obtained, directly or

15    indirectly, as the result of such violation." 21 U.S.C. §

16    853(a).  Under these statutory provisions, right to the funds

17    that defendant allegedly converted from Mango Markets'

18    depositors seems to have vested in the United States government

19    upon commission of the alleged crime.  The United States

20    therefore also has an interest in these funds and the ability

21    to protect them, including through a restraining order, an

22    injunction or a temporary restraining order, if it believed

23    that such an order was necessary to prevent the property from

24    being destroyed, removed from the jurisdiction of the court, or

25    otherwise made unavailable for forfeiture.  21 U.S.C. § 853(e).

N3ABLABD

1          There thus exists an additional protection for

2    plaintiff -- the protection provided by the criminal case.

3    Even if plaintiff had otherwise satisfied the standards of Rule

4    65, which it has not, the Court would be reluctant to grant

5    plaintiff a preliminary injunction freezing these assets in

6    which the U.S. government  -- if successful at the end of its

7    criminal case will have rights, title, and interest.

8          Regarding the third factor, Plaintiff also has not

9    shown that the "balance of hardships tips in its favor, much

10   less 'decidedly.'"  *Centocor, Inc. v. The Kennedy Inst. of*

11   *Rheumatology*, 2008 WL 4726036, at *4 (S.D.N.Y. Oct. 29, 2008)

12   (noting that party seeking injunction must show that balance of

13   hardships tips decidedly in the movant's favor).

14         Although denial of this motion creates some

15   possibility of plaintiff's potential judgment being depleted.

16   Defendant states that an order freezing his assets could have

17   this same effect.  Defendant stated at the conference on

18   February 24, 2023, that his assets are currently held in

19   cryptocurrency and there is therefore the risk that they will

20   "go up and down."  Dkt. No. 47 at 34.  To preserve their value,

21   defendant noted that his assets "need to be overseen and

22   somehow managed" rather than frozen.

23         Because these three factors all weigh against the

24   issuance of an injunction or are neutral, the Court holds that

25   the proposed preliminary injunction is not warranted in the

N3ABLABD

1  action.  Since a preliminary injunction shall not issue in this

2  case, the Court does not consider whether the issuance of an

3  injunction would harm the public interest.  See *U.S. S.E.C. v.*

4  *Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir.

5  2012) ("When a court orders injunctive relief, it should ensure

6  that injunction does not cause harm to the public interest.")

7          That concludes the opinion of the Court.  In short,

8  the Court denies the request for a preliminary injunction and

9  the temporary restraining order is dissolved.

10         Is there anything for me to address today from

11  plaintiff?

12         MR. BURSHTEYN:  Yes, your Honor, if I may make one

13  request.

14         THE COURT:  Sure.

15         MR. BURSHTEYN:  Plaintiff would request, given that

16  the forfeiture would only occur after a conviction, if your

17  Honor would consider providing a small amount of time for the

18  temporary restraining order to continue for the department of

19  justice to be apprised of this order.

20         They can, as your Honor mentioned, seek their own TRO.

21  They may also have the ability to seek a seizure warrant, and

22  that's all that plaintiff has at this time, your Honor.

23         THE COURT:  Any objection to that from defendant's

24  perspective?  Let me ask plaintiff, how long are you

25  requesting?

N3ABLABD

1          MR. BURSHTEYN:  Your Honor, just a reasonable period

2     to apprise the department of justice, perhaps seven to ten

3     days.

4          THE COURT:  What is the defendant's position about

5     seven days?

6          MR. BERKOWITZ:  Defendant's position is that the

7     department of justice has been aware of these proceedings.

8     They've chosen not to intervene here.  We don't see that as

9     being necessary.

10          THE COURT:  I think the request by the plaintiff is a

11     reasonable request.  I probably would have granted the request

12     if it was framed in terms of having a temporary continuance of

13     the TRO in order to consider whether to take an appeal from my

14     order.  So I think it is a fair request, and I'm going to order

15     that the TRO expire March 15, 2023.

16          MR. BURSHTEYN:  Your Honor, while plaintiff does not

17     have a position yet on appeal, we do look forward to reviewing

18     the order and discussing with our client.

19          THE COURT:  That's obviously your right.  Anything

20     further from defendant?

21          MR. BERKOWITZ:  No, your Honor.

22          THE COURT:  Can plaintiff remind me.  I take it I've

23     not scheduled an initial pretrial conference in this case.  Is

24     that right?

25          MR. BURSHTEYN:  That's right, your Honor.

N3ABLABD

THE COURT:  While we're all here, maybe it makes sense for me to set a date.  You'll also want to inform the U. S. Attorney's office of that date.  I don't know whether they would want to intervene and seek a stay of this action. They do sometimes seek that form of relief.  And I'm not prejudging whether or not they would be entitled to it, just that they should be apprised of the initial pretrial conference.

MR. LAWRENCE:  Your Honor, we have an April 3rd, response day in this action. Would you like to hold the conference before?  That's the date to either answer or move to dismiss, would you like a date before or after that.

THE COURT:  I'll hear from defendant with respect to that.

MR. BERKOWITZ:  Thank you.  Defendants would prefer to have the initial conference after the response date once we've decided on the course for this.  To be honest, it could take us sometime to confer with our client because of the situation.

THE COURT:  That's reasonable, and it'll also make the Rule 16 conference that you'll need to have before the conference before me meaningful, and that's not an extended period of delay.  Unless plaintiff has an objection to that, I'm prepared to schedule something in mid-April.

MR. LAWRENCE:  Not at all, your Honor.  No objection to be clear.

N3ABLABD

1           THE COURT:  How is April 17, at 11 a.m. work for the

2    plaintiff?

3           MR. LAWRENCE:  I'm sure it will work for me, your

4    Honor.

5           THE COURT:  And I'm prepared to have that

6    telephonically unless either party would like to come in for

7    it.  What's plaintiff's position?

8           MR. LAWRENCE:  Telephonically would be preferable,

9    your Honor.

10          THE COURT:  From the defendant's perspective, does

11    April 17th work?

12          MR. BERKOWITZ:  Yes, and likewise we'd also prefer

13    telephonically.

14          THE COURT:  I'll hold the initial pretrial conference

15    on April 17. Under my orders for initial pretrial conferences,

16    you'll notice that I require that the parties submit a proposed

17    case management plan.  I also provide that the time for making

18    a motion to dismiss is adjourned if you submit a letter

19    indicating to me that you intend to make a motion to dismiss.

20    If that is the case, I will then at the initial conference set

21    a date for the motion to dismiss.  It's not intended as a means

22    to permit the delay of the filing of a motion to dismiss.  It's

23    simply is intended to have the parties discuss the potential

24    motion and to raise any issues with me.

25          I do that in lieu of the parties submitting premotion

N3ABLABD

1    letters, so you'll see that in my order in my initial

2    practices.  Anything else from plaintiffs?

3              MR. LAWRENCE:  No, your Honor.

4              THE COURT:  From defendant?

5              MR. BERKOWITZ:  No, your Honor.

6              THE COURT:  Thank you, all.  I assume somebody is

7    going to order a copy of this transcript.

8              MR. LAWRENCE:  We will, your Honor.

9              THE COURT:  Good.  Thank you.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25